# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| DANA WHITE, Individually and On Behalf of All Others Similarly Situated, *Plaintiff* <br><br> v. <br><br> U.S. CORRECTIONS, LLC, US CORRECTIONS, LLC, and South East EMPLOYEE LEASING, INC., *Defendants* | Case No. 1:19-CV-00390-LY |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:** **THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant US Corrections, LLC's Motion for Summary Judgment and Memorandum in Support (Dkt. 58), Defendant South East Personnel Leasing, Inc.'s Motion for Summary Judgment and Memorandum in Support (Dkt. 59), and Defendant South East Personnel Leasing, Inc.'s Joinder to US Corrections, LLC's Motion for Summary Judgment and Memorandum in Support (Dkt. 60), all filed January 21, 2022; Plaintiff Dana White's Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. 66), filed February 18, 2022; and Defendant South East Personnel Leasing, Inc.'s Reply in Support of Motion for Summary Judgment (Dkt. 68) and Defendant US Corrections, Inc.'s Reply in Support of its Motion for Summary Judgment (Dkt. 69), both filed February 25, 2022.

The District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation or disposition, as appropriate, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 67.

1

I. **Background**

Plaintiff Dana White brings this Fair Labor Standards Act ("FLSA") action against her former employer, Defendant US Corrections, LLC ("USC"), and its staff leasing services provider, Defendant South East Personnel Leasing, Inc. ("South East"). USC is a commercial carrier providing intrastate and interstate prisoner transport services across the United States. Dkt. 58-2 at 2; Dkt. 58-4 ¶ 3. USC hires extradition officers[1] as transport agents. *Id.* at ¶¶ 3-4.

South East is a professional employer organization offering staff leasing services. Dkt. 59-3 ¶ 2. South East provided employee leasing services to USC under a Client Leasing Agreement, which included a Texas State Addendum. *Id.* at ¶¶ 3-5. The Client Leasing Agreement defined "Leased Employees" as "those employees who have completed [South East]'s employment process and have been accepted, approved, and paid by [South East]." Dkt. 59-4 ¶ III(A). The State Addendum states that: "A co-employment relationship exists between [South East] and [USC] as to covered Leased Employees." Dkt. 59-5 ¶ VII(C). The addendum further states that South East: "Shares with [USC] a right of direction and control over covered Leased Employees," including "the right to hire, fire, discipline, and reassigned covered Leased Employees." *Id.* ¶ II(A), (D). South East also paid employee wages and federal and state employment taxes, administered applicable benefit plans, provided workers' compensation insurance coverage, and provided unemployment compensation insurance for Leased Employees. Dkt. 59-4 ¶¶ III(B)(1)-(5).

White worked as an extradition officer from June 12, 2018 to January 23, 2019. Dkt. 66-1 at 4. She alleges that she was employed by both Defendants. Dkt. 1 ¶¶ 14, 17. White claims that she, along with other similarly situated extradition officers, regularly worked more than 40 hours per

---

[1] The parties use the terms "extradition officers" and "extradition agents" interchangeably.

week and that Defendants failed to compensate her at the required overtime rate, in violation of the FLSA. *Id.* ¶¶ 3, 5.

On April 5, 2019, White filed suit on behalf of herself and all similarly situated employees, alleging that USC, U.S. Corrections, LLC,[2] and South East[3] violated the FLSA by failing to pay overtime compensation to her and similarly situated employees and maintain accurate time and pay records. White seeks unpaid overtime compensation, liquidated damages, attorneys' fees and costs, pre-judgment and post-judgment interest, and an order allowing this action to proceed as a collective action under 29 U.S.C. § 216(b).

On June 13, 2019, USC moved to dismiss White's Complaint for failure to state a claim, arguing that White is exempt from the overtime pay requirements of the FLSA under the Motor Carrier Act ("MCA") exemption, 29 U.S.C. § 213(b); there is no private cause of action for alleged violations of the FLSA's recordkeeping requirements; and the Complaint fails to state a claim for relief for the putative group of individuals White seeks to represent. Dkt. 8. While USC's motion to dismiss was pending, on August 39, 2019, White filed a motion for partial summary judgment under Rule 56 seeking judgment as a matter of law that the MCA exemption does not apply. Dkt. 21. She contends that the Interstate Transportation of Dangerous Criminals Act of 2000 ("Jeanna's Act"), 34 U.S.C. §§ 60103(a), precludes applicability of the MCA exemption to those involved in transporting prisoners such that they are not exempted from the FLSA's overtime-pay requirements.

The undersigned Magistrate Judge recommended that the District Court dismiss White's overtime compensation and recordkeeping claims and deny White's motion for partial summary

---

[2] Default was entered against Defendant U.S. Corrections, LLC, on July 8, 2019. Dkt. 13.

[3] South East was sued erroneously as "South East Employee Leasing, Inc." Dkt. 5 ¶ 11.

judgment. Dkt. 34. The District Court adopted the Report and Recommendation and dismissed all of White's claims with prejudice under Rule 12(b)(6). Dkt. 38.

White appealed the decision regarding her overtime claim to the Fifth Circuit Court of Appeals, which determined as a matter of first impression that Jeanna's Act did not render the MCA exemption inapplicable to private prisoner transportation companies and their employees. *White v. U.S. Corr., LLC*, 996 F.3d 302, 307 (5th Cir. 2021).[4] The Fifth Circuit stated that: "We agree with the district court that the MCA exemption governs White's job with USC." *Id.* at 305. But the court reversed dismissal of White's overtime claim at the pleading stage, concluding that the determination whether an employee is exempt under the FLSA is primarily a question of fact better suited for summary judgment. *Id.* at 310.

> To sum it up: The district court correctly construed the law to determine that the MCA exemption governs the relationship between White and USC, irrespective of Jeanna's Act and its implementing regulations. But it was error to apply the MCA exemption to foreclose the otherwise plausible FLSA overtime-pay claim alleged by White in her complaint, at least at the pleading stage.

*Id.* The court remanded this case for further proceedings.

USC and South East now move for summary judgment under Rule 56. Each asks the Court to dismiss White's remaining claims as a matter of law under the MCA exemption.

## II. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable

---

[4] White did not appeal dismissal of her recordkeeping claim. *Id.* at 304 n.2.

4

jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Analysis

USC and South East ask the Court to dismiss White's remaining claims as a matter of law under the MCA exemption. Both move for summary judgment that White's FLSA claims fail as a matter of law because the MCA exempts USC from the FLSA requirements. South East further moves for summary judgment that, even though it is not a motor carrier, it receives the benefit of

5

the MCA exemption as a joint employer under the Fifth Circuit's holding in *Songer v. Dillon Res., Inc.*, 618 F.3d 467 (5th Cir. 2010), *abrogation on other grounds recognized by Amaya v. NOYPI Movers, L.L.C.,* 741 F. App'x 203, 205 n.2 (5th Cir. 2018).

### A. The MCA Exemption

The MCA exemption excuses employers from paying employees overtime in accordance with the FLSA. 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782.2(a). "The Supreme Court has reasoned that the purpose of the MCA exemption was primarily to ensure that operators of vehicles affecting highway safety were regulated by an entity with a greater understanding of the particular safety concerns." *Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 579 (5th Cir. 2018) (citing *Morris v. McComb*, 332 U.S. 422, 436 (1947)); *see also Levinson v. Spector Motor Serv.*, 330 U.S. 649, 681 (1947) (stating that "it is the intent of the Fair Labor Standards Act to give full recognition to the safety program of the Motor Carrier Act").

The MCA exemption provides that "an employee is exempt from the FLSA's overtime pay requirement if 'the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." *White*, 996 F.3d at 307 (quoting 29 U.S.C. § 213(b)(1)). The Secretary of Transportation "need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply." *Songer*, 618 F.3d at 472 (quoting *Barefoot v. Mid-Am. Dairymen, Inc.*, No. 93-1684, 1994 WL 57686, at *2 (5th Cir. Feb. 18, 1994) (per curiam)).

Section 31502 states, in relevant part, that the Secretary of Transportation may prescribe requirements for "a motor carrier" and "a motor private carrier." 49 U.S.C. §§ 31502(b)(1)-(2). The Department of Transportation has promulgated regulations that interpret the statutory requirements of the MCA exemption. *See* 29 C.F.R. §§ 782.0-782.8.

The regulation pertinent here is 29 C.F.R. § 782.2(a), which states that the applicability of the MCA exemption to a particular employee "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." The rule further explains that the Secretary of Transportation may establish the qualifications and maximum hours or service for employees of "motor carrier[s]" and "motor private carrier[s]" who:

> (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act, and
>
> (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a). Employees must meet both requirements for the MCA exemption to apply. *White*, 996 F.3d at 308 (citing *Allen v. Coil Tubing Servs., LLC*, 755 F.3d 279, 283 (5th Cir. 2014)). The employer bears the burden to establish a claimed exemption. *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441, 446 (W.D. Tex. 2016).

**B. Application of the MCA Exemption to US Corrections**

On appeal, White argued that USC was not subject to the Secretary of Transportation's jurisdiction, making the MCA exemption inapplicable under the first requirement. *White*, 996 F.3d at 308. The Fifth Circuit rejected this argument, concluding:

> But by their terms, neither Jeanna's Act nor its implementing regulations supplant the Secretary of Transportation's authority to regulate employees of private prisoner transportation companies who happen *also* to fit within the definition of the MCA. We therefore agree with the district court that, Jeanna's Act notwithstanding, the MCA exemption of the FLSA governs private prisoner transportation companies and their employees like White.

*Id.* at 309.

1. **Employed by Carriers Subject to the Secretary of Transportation's Jurisdiction**

The Fifth Circuit has determined that USC is subject to the Secretary of Transportation's jurisdiction. *Id.* at 309. USC has provided evidence that:

> (1) The United States Department of Transportation ("DOT") Federal Motor Carrier Safety Administration ("FMSCA") classifies USC as an interstate carrier for passenger transportation. Dkt. 58-3 at 1;
>
> (2) The DOT has issued USC a permit as a contract carrier of passengers, a license number, and an FMSCA Carrier Registration Number. Dkt. 58-3 at 1; Dkt. 58-6; and
>
> (3) USC is required to submit inspections and compliance reviews to DOT. Dkt. 58-7; Dkt. 58-8.

This undisputed summary judgment evidence shows that USC is a motor carrier subject to regulation by Secretary of Transportation under 29 C.F.R. § 782.2(a). Accordingly, there is no genuine dispute of material fact that White was employed by a motor carrier subject to the Secretary of Transportation's jurisdiction, satisfying the first requirement for the MCA exemption.

2. **Engaged in Activities Directly Affecting Operational Safety of Motor Vehicles**

White argues that USC cannot meet the second requirement for the MCA exemption because she did not operate vehicles weighing at least 10,001 pounds each workweek, and transporting prisoners between penal institutions "has nothing to do with *commerce*." Dkt. 66 at 18-19.

    a. **Commercial Motor Vehicle**

DOT regulations define a "commercial motor vehicle" as

> a self-propelled or towed vehicle used on highways in interstate commerce to transport passengers or property, if the vehicle—
>
> (A) has a gross weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;
>
> **(B) is designed or used to transport more than 8 passengers (including the driver) for compensation;**

>> (C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; **or**
>
> (D) is used in transporting material found by the Secretary of Transportation to be hazardous . . . .

49 U.S.C. § 31132(1) (emphasis added).

White's argument that USC cannot satisfy the second requirement for MCA exemption because she did not operate vehicles weighing at least 10,001 pounds is misplaced. Pursuant to Section 31132(1)(B), a vehicle "designed or used to transport more than 8 passengers (including the driver) for compensation" meets the definition of commercial motor vehicle.

White's driver logs show that she operated a vehicle capable of transporting more than eight passengers each workweek. Dkt. 58-5; *see also* Dkt. 58 at 14-16. In addition, USC's president and chief executive officer Joel Brasfield stated in a declaration that all U.S.C. drivers "transport prisoners in vehicles/vans all designed with a capacity and capable of transporting up to 14 passengers, including the driver. During her employment, Dana White did not have any workweek where she transported prisoners in a vehicle with a passenger capacity of less than 14 passengers, including the driver." Dkt. 58-4 ¶¶ 4-5.

Accordingly, there is no genuine issue of material fact that White operated a commercial motor vehicle as defined by DOT regulations during each workweek.

### b. Interstate Commerce

White also argues that USC cannot satisfy the second requirement for MCA exemption because "transporting persons who are confined against their will between penal institutions—a function of government—has nothing to do with *commerce*." Dkt. 66 at 19. White provides no authority for her contention that prisoner transportation does not implicate interstate commerce. She also fails to address the Fifth Circuit's holding that the MCA exemption governs "private prisoner

9

transportation companies and their employees like White." *White*, 996 F.3d at 309. Because White was a driver directly involved in interstate prisoner transportation, her argument that her activities do not implicate commerce is unavailing.

### 3. Conclusion as to US Corrections

The summary judgment record establishes that USC employed White as an extradition officer, and that her activities, including driving prisoners between penal facilities, directly affected the operational safety of motor vehicles in interstate commerce. USC thus has met its burden to show that the MCA exemption applies to it as an employer and to White as its employee, and no fact issue remains for trial. The undersigned Magistrate Judge therefore recommends that the District Court find as a matter of law that USC satisfies the requirements for exemption from the FLSA's overtime requirements under the MCA, dismiss White's FLSA claim, and enter judgment for USC.

## C. Application of the MCA Exemption to South East

South East argues that, even though it is not a motor carrier or private motor carrier, it is entitled to the MCA exemption as a joint employer under the Fifth Circuit's decision in *Songer*. There, the Fifth Circuit extended the MCA exemption to a staff leasing company that provided employees for a motor carrier because it operated as a joint employer with that carrier. *Songer*, 618 F.3d at 472-73. In determining that the staff leasing company was a joint employer and therefore a carrier, facts the court considered included that the staff leasing company hired and trained drivers; was responsible for their payroll; was reimbursed for wages and benefits paid to the drivers; and received a fee when the drivers were assigned. *Id.* at 473.

The Fifth Circuit uses the "economic reality" test to evaluate whether there is an employer/employee relationship under the FLSA. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Under the economic reality test, courts evaluate whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee

work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). A party need not establish each element in every case. *Id.* "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam).

South East submitted evidence that, under its agreement with USC, it retained "sufficient direction and control over the workplace and over Leased Employees as is necessary to supervise all day-to-day work activities of Leased Employees." Dkt. 59-4 ¶ V(A). South East had:

1) a right of direction and control over covered Leased Employees (Dkt. 59-5 ¶ II(A));
2) the right to hire, fire, discipline, and reassign Leased Employees (*id.* ¶ II(D));
3) the right of direction and control over the adoption of employment and safety policies (*id.* ¶ II(E));
4) responsibility for paying wages to Leased Employees and preparing, administering, compiling, and filing all payroll information and distributing payroll checks to Leased Employees from South East's accounts (Dkt. 59-4 ¶ III(B)(1));
5) responsibility for the withholding and remitting federal and state employment taxes for Leased Employees (*id.* ¶ III(B)(2)); and
6) responsibility to administer employee benefit plans and payments, workers' compensation insurance, and unemployment compensation insurance for Leased Employees (*id.* ¶ III(B)(3)-(5)).

This undisputed evidence shows that South East's rights and responsibilities satisfy the first, third, and fourth elements of the economic reality test for employer status.

White presents no evidence that South East did not act as her employer. Instead, she argues that South East's motion for summary judgment should be denied because it is not a motor carrier, relying on *Boutell v. Walling*, 327 U.S. 463 (1946), and *Steinmetz v. Mitchell*, 268 F.2d 501

11

(5th Cir. 1959). Dkt. 66 at 19. These cases did not involve employees jointly employed by a motor carrier and a staff leasing company or professional employer organization and thus are inapposite.

Considering the law and the record evidence, there is no genuine dispute of material fact that South East acted as White's employer under the economic reality test. *See Morgan v. Rig Power, Inc.*, No. 7:15-CV-073-DAE, 2017 WL 11017230, at *9 (W.D. Tex. Sept. 1, 2017) (granting summary judgment that defendant was employer under FLSA where three elements of economic reality test were met). The undersigned therefore recommends that the District Court find as a matter of law that South East was White's joint employer with USC and thus exempt from FLSA requirements under the MCA. The Court further recommends that the District Court dismiss White's FLSA claim against South East and enter judgment for South East.

### IV. Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant US Corrections, LLC's Motion for Summary Judgment and Memorandum in Support (Dkt. 58), Defendant South East Personnel Leasing, Inc.'s Motion for Summary Judgment and Memorandum in Support (Dkt. 59), and Defendant South East Personnel Leasing, Inc.'s Joinder to US Corrections, LLC's Motion for Summary Judgment and Memorandum in Support (Dkt. 60), and enter judgment for Defendants.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

### V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written

y

objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 11, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE